| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:08-CR-97 JVB |
| | ) | |
| MICHAEL L. MOKOL, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Michael L. Mokol, Jr.'s Motion for

Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c) [DE 75] and

Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33 [DE 89]. For the

reasons set forth below, the Court **DENIES** the Motions.


**A.      Background of the Case**

The Defendant was charged in a four-count Superceding Indictment on November 21,

2008 [DE 19]. In Count 1 and Count 3, the Superceding Indictment charged the Defendant with

being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). In Count 2, the

Defendant was charged with being a felon in possession of ammunition in violation of 18 U.S.C.

§ 922(g)(1) and, in Count 4, the Defendant was charged with using a firearm during and in

relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).

The case proceeded to a jury trial on February 23, 2009. On February 27, 2009, the jury

found the Defendant guilty on Count 1 and Count 2, and not guilty on Count 3 and Count 4.

On March 6, 2009, the Defendant filed the instant motion for judgment of acquittal as to

Count 1 and Count 2, alleging that no rational trier of fact could have found beyond a reasonable doubt that he possessed the firearm and ammunition charged in these two counts. On June 1, 2009, the Defendant filed the instant motion for a new trial contending that he was entitled to a new trial as a result of multiple errors.

**B.      Standard Under Rule 29**

Federal Rule of Criminal Procedure 29(c) governs motions for judgment of acquittal. A motion for judgment of acquittal should be granted only where there is insufficient evidence to sustain a conviction. *United States v. Galanti*, 230 F.3d 254, 258 (7th Cir. 2000) ("[a]s long as there is a reasonable basis in the record for the jury's verdict, it must stand."); *United States v. Hausmann*, 345 F.3d 952, 955 (7th Cir. 2003). "It is well established that a jury's verdict may rest solely upon circumstantial evidence." *United States v. Robinson*, 177 F.3d 643, 648 (7th Cir. 1999). When a defendant is challenging the sufficiency of the evidence presented at trial, the court must "consider the evidence in the light most favorable to the prosecution, drawing all reasonable inferences in the government's favor," and a "[r]eversal is appropriate only when, after viewing the evidence in such a manner, no rational jury 'could have found the defendant to have committed the essential elements of the crime.'" *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006) (citations omitted). In other words, a jury's verdict will be overturned "'only if the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *Id.* (citations omitted); *see also United States v. Farris*, 532 F.3d 615, 618 (7th Cir. 2008) (a verdict should be overturned on the basis of insufficient evidence "only if the record is devoid of evidence from which a reasonable jury could find guilt

beyond a reasonable doubt.") Therefore, a defendant "'faces a nearly insurmountable hurdle'

when attacking the sufficiency of the evidence used to convict him at trial because [the court's]

role is not to weigh evidence or make credibility determinations." *United States v. Pulido*, 69

F.3d 192, 205 (7th Cir. 1995). Based on this stringent standard, a defendant's challenge to the

sufficiency of the evidence rarely succeeds. *United States v. Hill*, 187 F.3d 698, 700 (7th Cir.

1999).

**(1)   *Count 1***

(a)   *Charge*

In Count 1 of the Superceding Indictment, a Grand Jury charged that from on or about

May 7, 2008 to on or about May 14, 2008, in the Northern District of Indiana, the Defendant,

having been convicted of a crime being punishable by a term of imprisonment exceeding one

year, did knowingly possess in and affecting commerce a firearm, a Smith & Wesson, 9

millimeter pistol, bearing serial number VKN6640, in violation of 18 U.S.C. § 922(g)(1).

(b)   *Facts*

In his motion, the Defendant sets forth the following facts and claims these facts support

his motion for judgment of acquittal as to Count 1 of the Superceding Indictment. (Def.'s Mot. at

2-4.)

In the late hours of May 6, 2008, a silver Smith & Wesson, 9 mm firearm, bearing serial

number VKN6640, was stolen from the hotel room of Louis Batides. Ryan Geary and Rob

Flavin testified that while Geary waited in his car, Flavin broke into the hotel room and stole the

firearm. Both Geary and Flavin testified that they committed the theft while the Defendant entertained Louis Batides at a local bar called Sheffields and that the Defendant specifically recruited them for the theft for the purpose of obtaining Batides's gun.

Geary and Flavin testified somewhat differently regarding what happened after the theft and whether the Defendant was given the firearm. Flavin testified that immediately after the theft, he and Geary went to a Walmart located in Merrillville and met the Defendant. Flavin testified that Valerie Adkins was present and he gave the firearm to the Defendant. Flavin then recounted that he, Geary, Adkins, and others went and partied at the Deluxe Inn, a local hotel.

Geary, on the other hand, testified that after the burglary they did not go to Walmart but to Flavin's home instead and that Flavin was not going to give the firearm to the Defendant. Geary stated that Flavin had him wait in the passenger side of his vehicle while Flavin broke into the hotel room and stole the firearm. When Flavin returned to the car, they went to Flavin's house. While in route to Flavin's house, Flavin told Geary that he was not going to give the Defendant the firearm until they got paid for the first burglary of Lee Mandic's house. Flavin then drove Geary to Flavin's house, took the firearm in the house with him, and came out after having changed his cloths. Geary understood that Flavin was keeping the firearm at his house. On re-direct examination, Geary testified that he did not see a firearm on Flavin when he came back to the car after changing, but agreed that he could have had one on him. Flavin then drove to Walmart where Geary dropped him off and left. Geary testified that he did not see the Defendant but understood Flavin may have been meeting him at Walmart.

Adkins testified that she did see the Defendant with a silver firearm; however, it was on the date that the Defendant purchased ammunition, which was on May 4, 2008. Adkins stated

that she saw the Defendant in possession of the silver firearm before the theft of Batides's Smith & Wesson, 9 mm pistol, bearing serial number VKN6640. Adkins also testified that she believed Flavin had traded a firearm for drugs and she saw Lori Miller with a firearm, but that firearm was black. Adkins stated that she believed the Defendant had a second firearm which she did not see, but that she "felt" it under the pillow of his bed.

Marco Ottomanelli testified that, in early May 2008, he took Miller and the Defendant to a house owned by his mother in Merrillville, where they all smoked crack cocaine together. When the crack cocaine was gone, the Defendant suggested that they could trade his firearm for drugs and then get the firearm back the next day. Ottomanelli explained that the drug dealer would take the firearm in exchange for the drugs and then for an additional $50, besides the $100 cost of the drugs, would give the firearm back. Ottomanelli testified that the Defendant gave him a "grayish . . . silverish gray" Smith & Wesson, 9 mm for this purpose. Ottomanelli took the firearm to his drug dealer, obtained the drugs and came back with the crack to share it with Miller and the Defendant. Ottomanelli stated that he did not know where the firearm came from and did not know the serial number of the firearm.

Miller testified she also saw the Defendant with a silver firearm, but she did not know the caliber of the firearm. Miller stated that the Defendant had the firearm when she got out of jail and had it until he gave it to Ottomanelli to trade for crack cocaine. Miller also stated that she carried the firearm and a magazine in her purse for the Defendant and the Defendant told her the firearm was stolen from a house. Miller corroborated Ottomanelli's testimony that a silver firearm had been traded for drugs while they were staying at his mother's house. The Defendant's daughter also testified that she had seen her father several weeks earlier with a black

and silver firearm.

*The Defendant's Contentions*

Regarding Count 1, the Defendant argues that, based on the evidence presented at trial, no rational trier of fact could have found beyond a reasonable doubt that the Defendant possessed the Smith & Wesson, 9 millimeter pistol, bearing serial number VKN6640, from on or about May 7, 2008 to on or about May 14, 2008, because the Government's evidence at the trial was in complete conflict. (Def.'s Mot. at 4-6.)

The Defendant contends that Flavin, a witness whose testimony the jury had been instructed to consider with "care and caution," was the only witness that specifically placed the charged firearm in the Defendant's hands. Yet, the Government's witnesses, Geary and Adkins, refuted the events as presented by Flavin. Thus, not only did Geary testify that Flavin had expressed the specific intent that he was not going to give the Defendant the firearm and that Flavin had taken the firearm into his house after the theft, Geary described a completely different set of events following the burglary of Batides's hotel room. Specifically, Geary explained that Flavin did not go directly to meet the Defendant as Flavin suggested, but rather Flavin drove Geary's car, with Geary in it, to his home and changed his clothes.

The Defendant asserts that although Geary testified that Flavin eventually went to Walmart and was dropped off there to possibly meet the Defendant, Geary did not see the Defendant. Flavin testified that Adkins was with the Defendant when he and Geary met with him which was immediately following the burglary. The Defendant points out that Adkins did not testify that there was another trip to Walmart after her observation that a crowbar was purchased

there. In fact, Adkins made it quite clear that the only firearm she saw was the silver firearm the Defendant had on May 4, 2008.

Next, the Defendant argues that there were so many firearms discussed throughout the trial testimony, including the silver firearm Adkins testified that the Defendant had on May 4, 2008, that there was no basis to conclude that the Defendant, if he received the firearm from Flavin, did so on May 7, 2008, and continuously possessed it until May 14, 2008. Furthermore, the Defendant asserts that while the Government's theory is that it was Batides's firearm that was traded for drugs by Ottomanelli, there is no basis for that conclusion because the firearm was never produced.

(d)     *Analysis*

The Court finds that when viewing the evidence in the light most favorable to the Government, and drawing all reasonable inferences from that evidence, there is sufficient evidence from which a jury could reasonably find the Defendant guilty on Count 1.

There were a number of witnesses at trial who testified that they saw the Defendant with the firearm at issue.

The Defendant contends that the evidence presented by the Government to the jury is in complete conflict. However, "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences." *United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989) (citation omitted). While there is much more evidence in the record than the Defendant proffers which supports his conviction on Count 1, his motion must be denied on the basis of his own facts. Therefore, when considering the evidence in the

light most favorable to the Government, and drawing all reasonable inferences in the Government's favor, a rational jury could have found the Defendant guilty beyond a reasonable doubt as to the essential elements of Count 1. Accordingly, the Defendant's Motion for Judgment of Acquittal as to Count 1 of the Superceding Indictment is **DENIED**.

**(2)**     *Count 2*

(a)     *Charge*

In Count 2 of the Superceding Indictment, the Grand Jury charged that on May 15, 2008, in the Northern District of Indiana, the Defendant, having been convicted of a crime being punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting commerce ammunition, six rounds of Remington–Peters 9 millimeter ammunition, in violation of 18 U.S. C. § 922(g)(1).

(b)     *Facts*

In his motion, the Defendant sets forth the following facts and claims these facts support his motion for judgment of acquittal as to Count 2 of the Superceding Indictment. (Def.'s Mot. at 6-7.)

On May 15, 2008, Detective Jeffrey Snemis requested that Lake Station Police Department officers stop the white Dodge Shadow being driven by the Defendant. Officer Zachery Crawford of the Lake Station Police Department was the first officer to approach the car. Officer Crawford ordered the Defendant, who was the driver, and Miller, the front seat passenger, to get out of the car. According to Officer Crawford, the Defendant and Miller were

removed from the car and placed in separate police cars. Officer Crawford testified that during the twenty to thirty minutes the car was stopped, he believed a quick search of the car was conducted for officer safety.

Detective Snemis testified that there was no search of the car, brief or otherwise, but that when he approached the car, he found a loaded magazine containing six bullets on the floorboard of the driver's side of the car in plain view. Detective Snemis further testified that without a search and no subsequent inventory of the car's contents, the car was towed to a garage and remained there over night until the following day. Detective Snemis identified the magazine, which was the Government's Exhibit 9, as the magazine he found in the car the Defendant was driving.

Corey Berger testified that he sold the white Dodge Shadow to the Defendant on May 2, 2008. Witnesses identified a number of people who had ridden in the vehicle between May 2, 2008, and May 15, 2008, including the Defendant, Miller, Adkins, and a person named Joe Davis. Flavin, who admitted to stealing Batides's firearm and one to two magazines, not only rode in the car, but had actually driven it.

Miller admitted in five different statements that she had a magazine in her purse, the purse had been zipped, and was behind her seat in the car. After Miller was shown a picture that Detective Snemis had taken of the magazine on the floorboard of the white Dodge Shadow, she suggested that maybe she had been wrong. Miller also admitted that she had previously said she brought the magazine with her from Florida and, at another time, that the Defendant gave her the magazine to hold. However, Miller never identified the magazine found on the floorboard as the same magazine she had had in her purse. There was no inventory of Miller's purse and it was

unclear from the testimony that Miller's purse was ever searched.

(c)     *The Defendant's Contentions*

The Defendant argues that no rational trier of fact could have found that he possessed the Remington–Peters 9 millimeter ammunition as charged in Count 2 of the Superceding Indictment. The Defendant contends that the Government was obligated to establish that the magazine found on the floorboard of the white Dodge Shadow containing the six Remington–Peters bullets was the magazine he possessed on May 15, 2008. (Def.'s Mot. at 8-9.)

The Defendant asserts that there was no testimony and the Government did not seek to have Miller identify the Government's Exhibit 9, as the same magazine she believed had been in her purse. Miller testified that she did not see the Defendant go into her purse, and thought it would have been virtually impossible for him to have done so without her knowledge. Moreover, neither Flavin nor Batides, who had described the Defendant's loaded magazine as full identified the magazine as coming from the theft of Batides.

The Defendant contends that because there were neither fingerprints nor testimony as to the specific magazine found on the floorboard allegedly belonging to him, a conviction could only be based on a theory of constructive possession. However, the Defendant claims there is no evidence of his knowledge of the presence of the magazine containing the six bullets at issue. Therefore, there can be no possession either constructive or otherwise.

The Defendant asserts that there were numerous people who had been in the white Dodge Shadow car within a very short period of time, including him, Miller, Adkins and Davis. Significantly, Flavin also admitted not only being in the car, but also driving it. Thus, there was

evidence that the Defendant, Miller, Adkins, and a person named Mario had belongings in the car. Therefore, the Defendant asserts that there was more than reasonable doubt as to the ownership of the loaded magazine found in the white Dodge Shadow car, and the Government failed to establish where the magazine came from and that the Defendant knew it was there.

(d)     *Analysis*

The Court finds that when viewing the evidence in the light most favorable to the Government, and drawing all reasonable inferences from that evidence, there is sufficient evidence from which a jury could reasonably find the Defendant guilty on Count 2. There was witness testimony presented at trial from which the jury could reasonably infer that the Defendant possessed the six rounds of Remington–Peters 9 millimeter ammunition. Detective Snemis testified that when he approached the Defendant's car, he found a loaded magazine containing the six bullets on the floorboard of the driver's side of the car in plain view. Although the Defendant points out that there were numerous people who rode in his car, this Court has no reasonable basis in which to second-guess the jury's credibility determinations or findings of fact.

Again, while there is much more evidence in the record than the Defendant proffers which supports his conviction on Count 2, his motion must be denied on the basis of his own facts. Therefore, when considering the evidence in the light most favorable to the Government, and drawing all reasonable inferences in the Government's favor, a rational jury could have found the Defendant guilty beyond a reasonable doubt as to the essential elements of Count 2. Accordingly, the Defendant's Motion for Judgment of Acquittal as to Count 2 of the

Superceding Indictment is **DENIED**.


**C.** **Standard Under Rule 33**

Federal Rule of Criminal Procedure 33(a) permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A court's decision to "grant or deny a motion for new trial rests within the sound discretion of the trial court." *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (citation omitted). In considering a motion for a new trial, a court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Id*. A court may grant a new trial if "the verdict is so contrary to the weight of the evidence that a new trial is required in the interest of justice." *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) (citations omitted). Thus, "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Morales*, 902 F.2d 604, 605 (7th Cir. 1990). However, "if the judge believes there is a serious danger that a miscarriage of justice has occurred–he has the power to set the verdict aside . . . even if he does not think that he made any erroneous rulings at the trial." *Id*. (citations omitted). Therefore, a new trial is required where "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993).


**(1)** ***Inflaming the Jury***

The Defendant contends that a new trial is warranted here because the Government was permitted in its opening statement and throughout the testimony to make statements and elicit

testimony which were intended to inflame the jury. (Def.'s Mot. at 2-7.) The Defendant contends that Government's trial strategy was to obtain a conviction by inflamming the jury with otherwise inadmissible, prejudicial, and irrelevant statements and innuendo, and by repeatedly asking witnesses if they feared the Defendant and also announcing how fearful the witnesses were of the Defendant. The Defendant's contention that the Government sought to inflame the jury rests upon three main arguments: (1) the Government's first two sentences of its opening statement that "If you ever talk, you will die. I'm not worried about a thing because I will get to you before you can say anything" announced the Government's intended and inappropriate strategy to obtain a conviction by inflaming the jury; (2) the Government's reference to the substance of the Defendant's prior criminal record in violation of *Old Chief v. United States*, 519 U.S. 172 (1997); and (3) the testimony of the Defendant's daughter that she saw him with a firearm "lacked any semblance of probative value and was unfairly prejudicial."

First, with respect to the Government's first two sentences of its opening statement, the Government made clear in the next lines of its opening statement that these comments came directly after, and were part of, the Defendant's confession to his former girlfriend that he illegally possessed firearms. The Government began its case with the Defendant's own words which were nothing short of a confession to two of the charged crimes. While the Defendant objected to the first two sentences of the Government's opening statement, citing to a preliminary motion in limine, claiming they were "complete hearsay" and were "highly prejudicial . . . and ha[d] absolutely nothing to do with possession," these statements went

directly to the Defendant's possession of the stolen firearms.[1] These statements, which had been tendered to the Defendant prior to trial, did not constitute hearsay because they were an admission by a party opponent and, as a result, excluded from the definition of hearsay under Federal Rule of Evidence 801(d)(2). The parties did not present a motion in limine concerning these statements; therefore, there was no pretrial ruling by the Court regarding the admissibility of the statements.[2] Because possession was the single most important element, the Defendant's statement concerning his possession of the firearms was key to the Government's case and the threat that came immediately following the Defendant's confession was equally important because it made the fact of the Defendant's confession more believable.

The Defendant claims that the Government continually announced how fearful the witnesses were of the Defendant which amounted to the Government telling the jury "[y]ou have to convict Michael Mokol because he was dangerous and will hurt any of these witnesses or others." (Def.'s Mot. at 5.) However, the Government elicited the witnesses' fear of the Defendant when it was necessary to rebut the Defendant's cross-examination, explain the witnesses' actions, and show why the Defendant was comfortable making confessions to witnesses. Therefore, these witness statements were not subject to exclusion under Federal Rule of Evidence 403, because the statements were highly probative and were not outweighed by the

---

[1]The Court in ruling on the Defendant's objection to the first two sentences of the Government's opening statement instructed the Government to eliminate any reference to the "die" part of the statement. After the Court's ruling, the Government continued its opening statement by stating "I will get to you before you can say anything. Those are the Defendants words. That's what he said after he told his girlfriend." The Defendant objected to this statement, which had been discussed at sidebar, as being an "argument and not a presentation of facts." The Court, however, overruled this objection. Additionally, the Court had already instructed the jurors that opening statements did not constitute evidence and the Court further advised that jurors that the first few sentences of the Government's opening statement were not evidence.

[2]The Defendant does not identify the motion in limine he purports supports his contention.

danger of any unfair prejudice to the Defendant. Accordingly, the Government's opening statement and the questioning of witnesses whether they feared the defendant were proper.[3]

Next, the Defendant asserts that the Government also violated the ruling in *Old Chief v. United States*, 519 U.S. 172 (1997) in its opening statement. (Def.'s Mot. at 2-3.) According to *Old Chief*, once a defendant offers a stipulation of the existence of a prior conviction, the Government may not make mention of the name or the nature of the prior conviction. The Defendant argues that while the Government did not name the prior conviction, it is "unquestionable that the government – with full intention and even thanking the Court after a favorable ruling – sought to have the jury begin this case under the color of the representation that the defendant had threatened Lori Miller with her life if she talked and that Michael Mokol's prior conviction was likewise for "such an offense." (Def.'s Reply at 3.) The Defendant points out that the Government argued:

> Mr. Kolar:   That is what the defendant told his girlfriend. That is what he told her. After he answered her question, after he told her that the two guns he had were stolen.
> Now, you're going to learn the defendant is such a person, that he has been convicted of such a crime that he was prohibited from carrying a firearm.

(Transcript of Trial, February 23, 2009, at 163.)  Following the Defendant's objection:

> The Court:   Let me back up just a second. The crime you're talking about, is this a crime that is the basis for the felony or felonies that prohibits–
> Mr. Kolar:   Yes.
> The Court:   – supposedly prohibits Mr. Mokol from possessing a firearm?
> Mr. Kolar:   Yes, Your Honor.
> The Court:   This is not another crime or something else?

---

[3]The Court finds the Defendant's citation to *United States v. Mannava*, 565 F.3d 412 (7th Cir. 2009) unpersuasive because the Government's questioning of the witnesses regarding their fear of the Defendant was not for the purpose of inflaming the jury and, unlike *Mannava*, this case was not "sufficiently close." *Id*. at 414.

Mr. Kolar:    No, Your Honor. And to be absolutely clear, we also did not go into the specifics of that crime that he was convicted of, such a crime that he's prohibited from carrying a firearm.

(Transcript of Trial, February 23, 2009, at 164.)

The Court disagrees with the Defendant's contention. In its opening statement, the Government did not mention or refer to the specific nature of his prior offenses or crimes. Rather, the Government explained that the Defendant was prohibited by federal law from possessing a firearm or a single round of ammunition. The Government was entitled to explain the Defendant's prohibited status in its opening statement without going into the specifics of the Defendant's prior crimes or naming them. There was nothing improper with the Government's opening statement because the Government never described the Defendant's prior offenses or any other aspect of his past. Accordingly, the Defendant's contention that the Government's use of a term "such a crime" somehow references the nature of the Defendant's prior crimes is not supported by the record.

Lastly, the Defendant claims the Government's eliciting testimony from the Defendant's daughter, Michelle Arnold, that he pointed a gun at her as a joke was for the purpose of inflaming the jury and had no evidentiary basis. (Def.'s Mot. at 5-7.) The Defendant further asserts that Arnold's testimony that he possessed a firearm before the theft of the two firearms failed to establish any legitimate element related to the charges in this case. Thus, the alleged possession of the firearm discussed by Arnold was outside the time frame of the events in the Superceding Indictment; therefore, it was error to permit the testimony. Furthermore, the Defendant contends that the prejudicial effect of permitting the Government to elicit testimony from Arnold regarding the possession of the firearm was apparent from the jury's question while

deliberating regarding their ability to consider other weapons than those charged in the Superceding Indictment. Therefore, the Defendant claims that his prior possession of a firearm was not directed toward any matter in issue and the testimony was impermissibly directed at propensity and dangerousness which is contrary to Federal Rules of Evidence 403 and 404(b).

The Court disagrees with the Defendant and finds that Arnold's testimony went directly to proving that he possessed a firearm, an essential element of the case, which was charged in the Superceding Indictment. While the Defendant claims that Arnold's testimony was that he possessed firearms prior to the theft of the two firearms at issue in the Superceding Indictment, her testimony related to the charged firearms. Ultimately, there were specific facts that tied the firearm mentioned in Arnold's testimony to one of the charged firearms.

Accordingly, the Defendant is not entitled to a new trial on any of these asserted bases because the Government's opening statement was proper, the Government did not violate the ruling in *Old Chief* by referencing the nature of the Defendant's prior conviction, and Arnold's testimony that the Defendant pointed a firearm at her as a joke was proper.

**(2)**      ***Ammunition Receipt–Government's Exhibit 4***

The Defendant claims that the Court erred in admitting a receipt for the purchase of ammunition (Gov't Ex. 4) from Walmart because the Government failed to lay a proper foundation for admission of the receipt as required by Federal Rule of Evidence 901(9). (Def.'s Mot. at 7-9.) The Defendant also claims that the Court erred by admitting the testimony of Walmart employees. The Court stands by its ruling at trial and need not elaborate any further especially in light of the fact that Exhibit 4 was introduced for the sole purpose of establishing

that the Defendant purchased .45 caliber ammunition, which was charged in Count 3 of the Superceding Indictment. The Defendant was found not guilty of the counts involving the Llama .45 caliber semi-automatic pistol, Exhibit 4 had no impact on the jury's ultimate verdict. The Defendant has failed to show how he was prejudiced by the jury's verdict of guilty as to Count 1 and Count 2 by the admission of this ammunition receipt into evidence and by the Walmart employees' testimony regarding the purchase of the ammunition. Therefore, the Defendant is not entitled to a new trial on this basis.

**(3)**     *Michelle Arnold's Testimony*

The Defendant avers that the Court denied his Sixth Amendment right to fully and fairly cross-examine his daughter, Michelle Arnold, before the jury. (Def.'s Mot. at 9-11.) Specifically, the Defendant contends that the Court's adoption of the Government's comments at side bar and the restriction to cross-examine Arnold before the jury, unconstitutionally impeded his right to cross-examine Arnold which precluded a fair trial. The Defendant claims that because the jury did not hear Arnold's full cross-examination, it was unable to properly assess Arnold's bias and credibility.

The Defendant sought to question Arnold regarding an incident in the parking lot at the Lake County Jail, in which after leaving the jail, Arnold found cocaine in her car that she did not believe had been there when she parked her car to see the Defendant. Arnold, on cross-examination, but out of the hearing of the jury, admitted the incident occurred. The Defendant asserts that the "clear import of the line of cross-examination was to give the jury an opportunity to assess the credibility of the witness, in particular, [Arnold's] claim that her father had made

incriminating statements to her during a jail visit – a representation upon which there was no corroborating evidence." (Def.'s Mot. at 10.)

As represented to the Court at sidebar, Defense counsel had spoken to other witnesses who had received calls from Arnold while she was in a panic just after the cocaine incident. Those witnesses reported that Arnold expressed fear that the cocaine was planted in her car in order to obtain cooperation against the Defendant. In fact, one witness reported Arnold expressed concern that if she did not cooperate with the authorities, she might be prosecuted. The Defendant contends that Court usurped the jury's role as fact finder and concluded that Arnold was a credible witness; therefore, the jury did not hear Arnold's testimony or the testimony from those witnesses who might impeach her.

With regard to Arnold's testimony, the Court determined that voir dire was appropriate before allowing the Defendant to explore her testimony in front of the jury. During voir dire, Arnold stated that she found cocaine in her car after visiting the Defendant at the Lake County Jail and those individuals she told about this incident suggested that the Government was trying to set her up. However, while she initially believed this idea, at the time of her testimony, she did not think anyone was trying to set her up and she had no reason to curry favor from the Government to avoid any type of charges.

The Court limited the Defendant's cross-examination of Arnold to prevent the Defendant from harassing her and confusing the issues with questions of marginal or no relevance. *United States v. McLee*, 436 F.3d 751, 761 (7th Cir. 2006) (a court has "broad discretion to impose reasonable limits on cross-examination based on concerns about 'harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only

marginally relevant.") Because the voir dire failed to establish that Arnold believed the Government placed narcotics in her car, this line of questioning would have been irrelevant to the issues in the case. Accordingly, the Court's ruling was an appropriate exercise of its discretion and did not limit the Defendant's right to confront Arnold's testimony; therefore, the Defendant is not entitled to a new trial on the basis of this issue.

**(4)      *Jury Instructions – Constructive Possession***

At trial, the Defendant objected to the Court's Jury Instructions 28 and 29.[4] In the instant motion for a new trial, the Defendant renews his objection to these same instructions. (Def.'s Mot. at 12-13.) The Defendant objects to these instructions asserting that the Government did not argue a constructive possession theory. Rather, the Government's theory was that: (1) the Defendant knowingly possessed the Remington–Peters 9 millimeter ammunition clip found on the floorboard of the white Dodge Shadow on May 15, 2009 (Count 2); and (2) the Defendant possessed the Smith & Wesson, 9 millimeter firearm, serial number VKN6640, from the date it was stolen on May 7, 2008 to May 14, 2009 (Count 1).

The Defendants argues that there were inconsistencies in the testimony at trial regarding

---

[4]The Court's Jury Instruction 28 states:

Possession of an object is the ability to control it. Possession may exist even when a person is not in physical contact with the object, but knowingly has the power and intention to exercise direction or control over it, either directly or through others.

The Court's Jury Instruction 29 states:

A person who has direct physical control over a thing, at a given time, is then in actual possession of it. The law recognizes also that possession may be sole or joint. If one person alone has actual possession of a thing, possession is sole. If two or more persons share actual possession of a thing, possession is joint. You may find that the element of possession, as just defined, is present if you find that the defendant had actual possession, either alone or jointly with others.

the 9 millimeter firearm and when the Defendant may have possessed it, if at all. For example, Flavin testified that he and Ryan met the Defendant directly after the theft and Flavin gave the firearm to the Defendant. Geary testified to a different account of the events occurring after the theft and, in fact, indicated that Flavin may have kept the 9 millimeter firearm and expressed an intention not to give it to the Defendant. Adkins testified that she saw the Defendant with a firearm during meeting the description of the 9 millimeter firearm, but prior to the theft of the 9 millimeter firearm, bearing serial number VKN6640.

The Defendant further asserts that the Government's evidence as to the Defendant's possession of the 9 millimeter firearm as charged in Count 1 was not clear. However, what was clear from the testimony of Geary and Flavin was that the Defendant had been involved in planning the burglary leading up to the theft of the 9 millimeter firearm. Thus, accepting Geary and Flavin's testimony, they had stolen the 9 millimeter firearm, but they had done so at the Defendant's direction.

As to the 9 millimeter ammunition clip, Miller testified that she possessed the firearm and may have even brought the clip with her from Florida. Moreover, others including Flavin had driven the Defendant's white Dodge Shadow during the relevant time period. However, there was never any testimony that the 9 millimeter ammunition clip was the clip actually stolen with the 9 millimeter firearm. Accordingly, the Defendant states that it was within the province of the jury to decide where the ammunition clip came from and if the Defendant actually knew the clip was in his car.

The Defendant contends that the problem with the Court's Jury Instructions 28 and 29 was that they incorrectly lead the jury to believe that if the jury concluded that others had stolen

the firearms and possessed the firearm or ammunition clip at the Defendant's direction, then the Defendant could be held liable for that possession. The Defendant asserts that conspiracy or *Pinkerton* liability is not a legitimate theory of conviction in a § 922(g)(1) case. The fact that an alleged coconspirator possessed the firearms during the burglaries does not establish that the Defendant possessed the firearms at the times charged in the Superceding Indictment. The Defendant cites to *United States v. Walls*, 225 F.3d 858 (7th Cir. 2000) to support his contention.

The Court finds the Defendant's citation to *Walls* inapposite because the jury instructions in *Walls* included instructions on constructive possession as well as *Pinkerton* liability. The *Walls* court was concerned that "even lawful possession of a firearm by a conspirator could presumably be used to establish a § 922(g)(1) violation for a co-conspirator who is a felon." *Walls*, 225 F.3d at 865. Here, constructive possession jury instructions were appropriate because the Defendant had someone else steal firearms to bring to him. *United States v. Rawlings*, 341 F.3d 657, 659 (7th Cir. 2003) (constructive possession is "the power and the intention at a given time to exercise dominion and control over the firearm, either directly or through others."). The Court's jury instructions were appropriate because the Defendant had his girlfriend carry a firearm and ammunition for him. Because the jury was not instructed on a *Pinkerton* theory and that theory was not argued to the jury, the Defendant is not entitled to a new trial based on this issue.

**(5)**     ***Rule 404(b) Evidence of Burglaries***

The Defendant argues that the Court erred in permitting the Government to rely on co-conspirator statements and admit evidence of the Defendant's alleged participation in the

burglaries pursuant to Federal Rule of Evidence 404(b). (Def.'s Mot. at 14-17.)  The Defendant states that the Government's case surrounded claims that there was a conspiracy in which he was involved to commit burglaries for the purpose of acquiring firearms and other goods. The Defendant contends that the evidence of the conspiracy was irrelevant to proving violations under 18 U.S.C. § 922(g)(1). Thus, the only issue in the case should have been whether the Defendant possessed the firearms as charged in the Superceding Indictment.

The Defendant asserts that in this case the evidence of the co-conspirator statements was not intertwined with the charged crimes because there was never any evidence that the Defendant possessed the firearms during the burglaries. In fact, the testimony at trial was consistent that the Defendant was not present during the burglaries. Thus, the conspiracy to commit the burglaries as alleged by the Government, did not establish that the Defendant possessed any firearm. The Defendant could have possessed the firearms as alleged by the Government and not participated in the burglaries. Therefore, the Defendant asserts that the burglaries are not so inextricably intertwined with the possession of the firearms as to require their admission, and the detailed evidence of the co-conspirator statements, or that a conspiracy existed at all, remains irrelevant to the charged crimes and highly prejudicial to the case.

Rule 404(b) prohibits evidence of "other crimes, wrongs, or acts" to prove "the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). However, Rule 404(b) also provides that evidence of "other crimes, wrongs, or acts" may be admissible to establish "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "Almost all evidence admissible under the 'inextricably interwoven' doctrine is admissible under one of the specific exceptions in Rule 404(b)." *United States v.*

*Taylor*, 522 F.3d 731, 735 (7th Cir. 2008). Moreover, "[t]he plan exception to Rule 404(b) applies where the extrinsic act evidence helps explain how the charged offense unfolded or developed, not where the evidence merely indicates the defendant committed the same crime on other occasions." *United States v. Tai*, 994 F.2d 1204, 1211 (7th Cir. 1993).

Here, the charged crimes were inextricably interwoven in the Defendant's plan to commit burglaries to obtain firearms. Evidence of the Defendant's planning of burglaries to obtain firearms and recruit people to carry out those burglaries was necessary to show the jury how the Defendant obtained firearms. The Government could not have presented its case in an understandable or coherent manner without referring to the burglaries to obtain the firearms and the subsequent trading of the firearms for narcotics. Because there was no unfair prejudice to the Defendant in admitting the evidence of the burglaries, which were part and parcel of the Defendant's plan to commit the burglaries for the purpose of obtaining the firearms, the Defendant is not entitled to a new trial.

**D.     Conclusion**

The Court having considered all of the Defendants bases for asserting he is entitled to a new trial, finds that a new trial is not warranted because the jury's verdict of guilty on Count 1 and Count 2 of the Superceding Indictment was not "so contrary to the weight of the evidence that a new trial is required in the interest of justice." *Washington*, 184 F.3d at 657. A new trial, therefore,  is not required because any trial errors or omissions did not jeopardize the Defendant's substantial rights. *Reed*, 986 F.2d at 192.

Accordingly, based on the foregoing reasons, the Court **DENIES** the Defendant's Motion

for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c) [DE 75] and the

Defendant's Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33 [DE 89].

SO ORDERED on July 28, 2009.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE